## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| DONNA M. BOKMA and DANIEL SAMSIL, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>PERFORMANCE FOOD GROUP, INC.,<br><br>    Defendant. | Civil Action No.: 3:24-cv-00686-DJN<br><br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Donna K. Bokma and Daniel Samsil ("Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Performance Food Group, Inc. ("PFG" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.      It is both unfair and unlawful for entities like the PFG to impose punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendant's practice of charging a "tobacco surcharge" that unjustly forces certain employees to pay higher premiums for their health insurance. Such surcharges violate the Employee Retirement Income Security Act ("ERISA") and its anti-discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

2.    Tobacco surcharges have become more prevalent in recent years, but to be lawful, they must adhere to specific rules set forth by ERISA and related regulations. These rules mandate that employers cannot charge extra fees based on tobacco use unless those fees are part of a *bona fide* wellness program that offers a reasonable alternative standard to all participants. While ERISA allows for wellness programs that incentivize healthy behavior, these programs must meet strict criteria.

3.    First, wellness programs must genuinely promote health, not merely serve as a revenue generator. Second, the program must provide a "reasonable alternative standard" to individuals for whom it is difficult to meet the initial health requirement, such as being tobacco-free. This reasonable alternative could include participation in a smoking cessation program, through which participants can avoid the tobacco surcharge for the entire plan year. Most importantly, employers must clearly communicate the availability of this alternative standard in all relevant plan materials.

4.    However, the Performance Food Group, Inc. Employee Benefits Plan (the "Plan") fails to offer the requisite reasonable alternative standard as mandated by law. All similarly situated participants must have the same opportunity to complete an alternative standard to earn the "full reward," which means avoiding the surcharge for the entire plan year. Furthermore, every communication about the surcharge must clearly inform participants of the availability of the alternative standard and the possibility of accommodating physician recommendations. The regulations released by the Department of Labor make clear that these requirements must be met. However, Defendant has failed to provide a reasonable alternative standard and has failed to provide the requisite notice. Defendant's wellness program fails to retroactively reimburse participants who complete the Quit 4 Life program; rather, Defendant provides participants with

2

*prospective* relief only. As a result, the Defendant's tobacco surcharge is in violation of ERISA's anti-discrimination provisions. It imposes additional costs on employees who use tobacco products without satisfying the legal criteria for a *bona fide* wellness program.

5.      Plaintiffs Bokma and Samsil are current and former employees of PFG, respectively, and were required to pay the tobacco surcharge to maintain health insurance coverage under the Plan. The surcharge imposed an additional financial burden on them and other similarly situated employees.

6.      Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and obtain plan-wide equitable relief to prevent PFG from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. § 1109, PFG, as a fiduciary of the Plan, has a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiffs also seek appropriate equitable relief under 29 U.S.C. § 1132(a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

7.      Plaintiff Donna Bokma is, and at all times mentioned herein was, an individual citizen of the State of Pennsylvania residing in the County of Northumberland. At all times relevant herein, Ms. Bokma was an employee of PFG who paid the tobacco surcharge in the form of additional premiums associated with the health insurance offered through her employer during the applicable limitations period.

8.      Plaintiff Bokma is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

9.      Plaintiff Saniel Samsil is, and at all times mentioned herein was, an individual citizen of the State of Kentucky. Plaintiff Samsil is a former employee of PFG and was a participant

in the Plan from 2021 to 2023 who paid the tobacco surcharge in the form of additional premiums associated with the health insurance offered to him.

10.     Plaintiff Samsil is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

11.     PFG is a leading foodservice distributor in the United States, providing a wide range of products, including groceries, fresh produce, meats, and beverages, to restaurants, healthcare facilities, educational institutions, and other foodservice customers. With an expansive network of distribution centers, PFG has a significant presence throughout the United States and serves over 300,000 customer locations across North America. As of June 29, 2024, PFG had approximately 37,000 full-time and part-time employees across North America with nearly $60 billion in total sales.

12.     At all times relevant to this lawsuit, Defendant sponsored, maintained, and managed the Plan. PFG is the Plan Administrator. *See* Plan Document, § 2.11 (defining "Plan Administrator" as "the Company."). Recently filed public documents show the Plan has over 34,000 active participants as of December 31, 2023. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Defendant because it is registered and headquartered in this District, and Plaintiffs' claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiffs and the Class in the Commonwealth of Virginia.

15.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because this is the District in which Defendant has its principal place of business and where a substantial portion of

the statutory breach took place. Additionally, Defendant conducts business and can be found in this District.

**FACTUAL BACKGROUND**

**I.     DEFENDANT'S TOBACCO SURCHARGE VIOLATE ERISA'S ANTI-DISCRIMINATION RULE**

16.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use and vaccination status. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1). While the statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. § 1182(b)(2)(B)), these "wellness programs"— to qualify for the safe harbor exception — must strictly adhere to the mandated regulatory requirements.

17.     To avoid unlawful discrimination, ERISA § 702, 29 U.S.C. § 1182, mandates that plans meet the criteria outlined in the nondiscrimination regulations. These regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives, must meet detailed requirements to qualify for the safe harbor. As the Department of Labor explained, these criteria "set forth criteria for a program of health promotion or disease prevention offered or provided by a group health plan or group health insurance issuer that must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33160 (June 3, 2013). "That is," the DOL explained, "these rules set forth criteria for an affirmative defense that can be used by plans and issuers in response to a claim that the plan or

issuer discriminated" against participants. *Id.* Critically, the DOL clearly states that it is "[t]he intention of the [DOL] . . . that, regardless of the type of wellness program, ***every individual participating in the program should be able to receive the full amount of any reward or incentive, regardless of any health factor.***" *Id.* (emphasis added).

18.    A key requirement for wellness programs is that "[t]he reward under the program must be available to all similarly situated individuals," and plans must clearly disclose the availability of a "reasonable alternative standard" in "all plan materials" describing the program's terms. *See* 29 C.F.R. § 2590.702(f)(4)(iv) (2013). Effective for plan years beginning on or after January 1, 2014, these regulations emphasize that outcome-based wellness programs[1] must make rewards available to any individual who does not meet the initial standard, provided they comply with a reasonable alternative standard or receive a waiver of the otherwise applicable requirement. *Id.* In addition, wellness programs cannot impose requirements that are overly burdensome or serve as a pretext for discriminating against participants based on a health factor. Instead, they must genuinely promote health or prevent disease. *See* 78 Fed. Reg. 33158, 33166. Failure to meet these standards disqualifies the program from ERISA's safe harbor protections and renders it discriminatory under federal law.

19.    While ERISA permits employers to implement wellness programs that incentivize healthy behavior, such programs must comply with strict criteria to qualify for the safe harbor provision. *See* 29 C.F.R. § 2590.702(f). Specifically, the regulations mandate that the program must provide a reasonable alternative standard or waiver to individuals who cannot meet the initial health requirement. The Department of Labor ("DOL") has made clear that wellness programs must not be "overly burdensome" or operate as a "subterfuge for discriminating based on a health factor." *See* 78 Fed. Reg. 33158, 33166. Plans that fail to provide adequate notice, retroactive

---

[1] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

reimbursements, or meaningful opportunities for participants to achieve the reward violate these requirements.

20.     Defendant's tobacco surcharge violates this provision. Plaintiffs and all others similarly situated were required to pay an additional premium or contribution per year based on a "heath status-related factor" — their use of tobacco products. Plaintiffs, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

21.     Specifically, Defendant imposes an unlawful tobacco surcharge on employees and their spouses/domestic partners who are enrolled in the Plan and have used nicotine products within the last 12 months. Defendant requires employees to certify their own tobacco usage as well as that of their enrolled spouses or domestic partners during enrollment. If no tobacco-free certification is provided, Defendant automatically classifies the individual as a tobacco user and applies the surcharge.

22.     In 2022, and, upon information and belief, for years prior and for 2023 and 2024, PFG charged an annual nicotine surcharge of $600 for employees and $300 for spouses or domestic partners, prorated per pay period. That means each Plan Year (defined as the 12-month calendar year commencing January 1 and ending December 31, PFG administers a policy on all participants who attested to using tobacco[2] in the past 12 months with a periodic and regular surcharge that is deducted from their paychecks. PFG's surcharge policy applies not only to tobacco users but also extends to individuals using tobacco replacement therapies, which are widely recognized as cessation tools to help quit smoking, unfairly penalizing employees seeking to improve their health. Under the Plan, Plaintiff Bokma paid $23.08 per paycheck for an annual total of $600. Plaintiff Samsil paid the same.

---

[2] Tobacco products subject to the surcharge include e-cigarettes, vaporizers, cigarettes, cigars, smokeless tobacco, and nicotine replacement therapies such as patches, gum, and lozenges.

23.     During this period, Defendant controlled the tobacco surcharge, including determining which participants were charged and by withholding the tobacco surcharge from a participant's paycheck. Rather than placing these funds in a trust account, Defendant retained the amounts collected as part of its own assets.

24.     The Plan offered by Defendant requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any tobacco use and fails to meet the safe harbor exception.

## II.     DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS

25.     Defendant failed to provide a compliant wellness program for tobacco-using participants by failing to provide retroactive reimbursement and by failing to provide sufficient notice requirements. As discussed, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard. In this case, being tobacco-free for 12 months. The standard is intended to ensure that participants have an opportunity to avoid the surcharge completely by participating in a wellness program, like smoking cessation programs. Additionally, to satisfy the regulatory requirements, employees must receive the "full reward" once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year.

26.     As discussed, ERISA has an exception to its general non-discrimination rules. *See* 29 U.S.C. § 1182(b)(2)(B). This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in in a *bona fide* wellness program. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer a wellness program that is designed to increase the well-being of the person such as, for example, smoking cessation program.

27.     A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include. Based on "all the relevant factors and circumstances[,]" the wellness program must not be "overly burdensome" or operate as a "subterfuge for discriminating based on a health factor." *See* 78 Fed. Reg. 33158, 33166. The regulations make clear that wellness programs, like smoking cessation programs, must satisfy certain criteria to qualify for the safe-harbor exception. *See* 78 FR 33158, 33159. To qualify under ERISA, there are three basic requirements: <u>First</u>, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; <u>second</u>, everyone in a similar situation must have a chance to earn the "full reward" — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; <u>third</u>, the program must be disclosed "in ***all*** plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

28.     Defendant's tobacco surcharge program did not and does not satisfy the requirements. It does not provide a reasonable alternative standard that provides all similarly situated employees with the right to earn the "full reward." It also does not provide notice of a reasonable and alternative standard. As a result, Defendant cannot meet the elements of this affirmative defense.

29.     While PFG offers the "Quit 4 Life" program as part of its wellness initiative, the Benefits Guide does not sufficiently explain the process by which employees and their spouses/domestic partners can avoid or remove the surcharge retroactively. Specifically, the guide mentions that participants can complete the Quit 4 Life program, but the surcharge will be removed only on a *prospective* basis, not for the entire plan year, as required. The Benefits Guide states:

> If you or your spouse/domestic partner is a nicotine user, the *surcharge can be removed by completing* the Quit 4 Life program, offered as part of PFG's wellness program.[3]

30.     The Plan fails to offer retroactive reimbursement for participants who complete the program. While working for PFG, Plaintiff Samsil participated in a meeting with other tobacco users discussing the tobacco surcharge. At that meeting, in 2023, the individual leading the meeting on behalf of Defendant informed Plaintiff Samsil and others, following a question about retroactive reimbursement, that participants could have the tobacco surcharge removed *only* on a go-forward basis *after completing the program*. The meeting leader explained that participants who complete the Quit 4 Life program mid-plan year are not refunded the surcharge for the months preceding program completion. There would be no prorated refunds to such participants for the portion of the plan year in which the surcharge was already paid, thereby denying the "full reward" for compliance with Defendant's wellness program, as required by 29 C.F.R. § 2590.702(f)(4)(iv). Because Defendant's wellness program does not provide uniform availability of the "full reward" to all similarly situated individuals, the wellness program impermissibly discriminates against tobacco users.

31.     This means participants who become tobacco-free at any point during the plan year or who complete the "Quit 4 Life" smoking cessation program are unable to avoid the surcharge. Once they finish the wellness program, they can avoid the surcharge prospectively, but are not retroactively reimbursed for any surcharges already paid in that plan year. This practice of removing the surcharge on a prospective basis only after completion of the wellness program violates ERISA's requirements that participants receive the "full reward" after satisfying the alternative standard. To comply with the regulatory requirements, Defendant should have offered reimbursement for the surcharges paid prior to completing the program, which it failed to do.

32.     Defendant, during the applicable limitations period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue

---

[3] 2022 Benefits Guide at 4 (emphasis added).

to be required to pay the surcharge. In addition to sponsoring the Plan, Defendant maintained and administered the Plan. Defendant withholds the amount of the surcharge from participants' paychecks and deposits these funds into its own accounts, rather than into a trust account. By depositing these ill-gotten gains into its own accounts, Defendant has dealt with assets of the Plan for its own interests, in violation of ERISA. Defendant funds the Plan through contributions from its own general assets, and by retaining the proceeds from the unlawful surcharge in its own accounts, Defendant not only earned, and continues to earn, interest on these ill-gotten funds, but also reduced its own financial contributions to the Plan.

33.    Defendant has a fiduciary responsibility to ensure that funds earmarked for the Plan are used to support coverage for its employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendant has increased its own bottom line by minimizing the amount of its contributions to the Plan, thereby allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

34.    Additionally, ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all plan materials. The Benefits Guide provides ambiguous and misleading language that does not clearly notify participants that they are entitled to a full reward, including retroactive reimbursement of any surcharges paid during the plan year, upon completion of the Quit 4 Life program, in violation of ERISA's notification requirements. Thus, the Benefits Guide fails to adequately communicate a reasonable alternative program undermining participants' ability to make informed decisions about their health coverage.

35.    Because the Plan fails to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"— avoiding the surcharge for the entire plan year — Defendant's wellness program fails to provide reasonable alternative standards and fails to comply with the requirement to make available the "full reward" to participants. In other words, while Defendant offers a tobacco cessation program, based on the facts and circumstances with

regards to that program, it is ***not*** designed to promote health; rather, it is a subterfuge for discriminating against tobacco users, targeting them for Defendant's own financial gain and in violation of ERISA's requirements. Employees who complete the wellness program can only avoid the surcharge on a go-forward basis and are not eligible for retroactive reimbursement for surcharges already paid during the plan year. Further, as discussed further below, the Plan fails to provide adequate notice to participants. On these bases, the Plan violates ERISA's anti-discrimination provisions.

### III.    DEFENDANT FAILED TO NOTIFY PARTICIPANTS OF A REASONABLE ALTERNATIVE STANDARDS

36.    To qualify as a compliant wellness program under the regulations, employers must provide notice of the availability of a reasonable alternative standard. The regulations require plans and issuers to "disclose ***in all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E). The regulations make clear that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description ("SPD"), as well as in the applicable governing plan documents (which must be provided upon request), if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." 78 FR 33158, 33166 n. 24.

37.    Defendant does not include adequate notification in ***all*** Plan materials. There is no mention whatsoever of the tobacco surcharge or the "Quit 4 Life" program in either the Plan Document or the SPD. While the regulations do not require a clear explanation in both documents,

the regulations make clear that mention of the surcharge and the applicable notice requirements be in at least one of them. *Id.* This alone is grounds for finding a lack of compliance with the notice programs outlined in the regulations. Defendant's Benefits Guide, which appears to be the sole document discussing the tobacco surcharge, fails to meet the regulatory notice requirements. The mention of the surcharge and the wellness program is buried at the bottom of a page in a document exceeding 30 pages in length. This placement and lack of prominence, under the facts and circumstances, fails to satisfy the requirement that the wellness program be reasonably designed. The Benefits Guide includes only vague language stating that the surcharge "can be removed" by completing the Quit 4 Life program but does not explain that individuals who complete the program are not provided with the full reward. Thus, Defendant's wellness program fails to notify participants of the availability of a *reasonable* alternative standard that would eliminate the tobacco surcharge for the entire plan year, in violation of ERISA.

38.    Also, Defendant failed to provide sufficient notice in the governing plan documents. Neither the Plan document nor the SPD informs employees that completing the program will entitle them to the full reward of avoiding the surcharge for the entire year. These documents governing the Plan do not even mention a tobacco surcharge. Defendant's failure to include the required disclosures in either the Plan document or the SPD reflects a systemic disregard for the regulations.

39.    Further, there is no mention that Defendant's wellness program will consider "recommendations of an individual's personal physician" if they are unable to or it is medically inadvisable to complete the smoking cessation program. By failing to notify individuals of an alternative to the wellness program, including the contact information for such alternative, Defendant further fails to satisfy the notice requirements outlined in the regulations. Numerous examples in the regulation identifying hypothetical programs that comply with the notice requirements state: The notice, which includes a statement that recommendations of an

individual's personal physician will be accommodated, also complies with paragraph (f)(4)(v) of this section.

40.    Defendant's failure to adequately disclose a *reasonable* alternative standard or the disclosure regarding a participant's physician's recommendations, deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard. The Benefits Guide also fails to inform participants that they may work with their personal physician to develop a reasonable alternative standard to the wellness program. This omission is particularly egregious because the availability of involving a participant's personal physician is a key safeguard to ensure that the wellness program is inclusive and does not disproportionately burden individuals with medical conditions or other factors that prevent participation in the program's standard wellness program.

41.    Thus, while there appears to be an wellness program to avoid a portion of the tobacco surcharge *prospectively* once participants complete the Qui 4 Life program, there is no mention of a *reasonable* alternative standard by which participants like Plaintiffs could obtain the "full reward" for the plan year. Further, there is no mention of any other alternative to the non-compliant wellness program that would accommodate a participant's physician's recommendations. Accordingly, Defendant's wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

42.    Defendant, by failing to comply with its obligations to provide and notify participants of the availability of reasonable alternative standards by which plan participants can avoid the tobacco surcharge and receive the "full reward," has violated ERISA's anti-discrimination provisions.

## CLASS DEFINITION AND ALLEGATIONS

43.    Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

44.     Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> **Tobacco Surcharge Class** (the "**Tobacco Class**")
> All individuals residing in the U.S. who paid a tobacco surcharge in connection with their participation in the Plan.

45.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

46.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

47.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

48.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains hundreds of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

49.     **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

b.  Whether the Plan's wellness program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c.  Whether Defendant notified participants in *all* plan materials discussing the surcharge of a way for participants to avoid the tobacco surcharge and obtain the "full reward";

d.  Whether Defendant provided notice of the reasonable alternative standard that allowed participants to avoid the tobacco surcharge for the entire plan year;

e.  Whether Defendant failed to provide notice that a participant's physician's recommendations would be accommodated, as required by the regulations;

15

f.  Whether Defendant's tobacco surcharge violates ERISA and the applicable regulations;

g.  Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

h.  Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its Plan to ensure compliance with ERISA and applicable regulations; and

i.  The appropriate mechanisms to determine damages on a class-wide basis.

50.    **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

51.    **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

52.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory

16

judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

53.     Plaintiffs on behalf of herself and the Class seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the entire Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiffs and the members of the Class will have suffered damages. Unless Class-wide equitable relief is awarded, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
### (Violation of 29 U.S.C. § 1182)

54.     Plaintiffs re-allege and incorporates herein by reference all allegations in paragraphs 1–53 of this Complaint.

55.     Defendant improperly imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of up to $600 per participant annually (and $300 for their dependents) who use tobacco, and by charging those participants higher premiums for additional insurance and disability coverage Defendant is charging some participants more than others based on a health status-related factor, in violation of ERISA § 702(b), 29 U.S.C. § 1182(b).

56.     29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or

to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory surcharge on tobacco users, without offering a compliant wellness program, Defendant discriminates against individuals like Plaintiff who use tobacco products.

57.     Defendant's imposition of the tobacco surcharge is a violation of ERISA § 702 and the applicable regulations thereunder, including but not limited to 29 C.F.R. § 2590.702. Further, Defendant's failure to provide a reasonable alternative standard to the smoking cessation program it offers to participants constitutes a failure by Defendant to provide participants with a compliant wellness program. Participants can avoid only *prospective* surcharges upon completion of the smoking cessation program rather than recovering retrospective surcharges already paid. By failing to provide an avenue for participants like Plaintiff to obtain the "full reward" of the wellness program, Defendant failed to provide a compliant wellness program.

58.     Further, Defendant failed to provide the proper notice in **all** Plan materials. By failing to include any mention of the wellness program in the Plan Document or the SPD, Defendant failed to provide the requisite notice to participants of the wellness program and a reasonable alternative to avoid the surcharge.

59.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3). Plaintiffs and the Class were charged an improper fee in connection with a health related factor that enabled Defendant to extract additional funds that it could use to avoid contributing to the Plan. Equitable relief is necessary to recover those funds.

60.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT II
## FAILURE TO NOTIFY OF REASONABLE ALTERNATIVE STANDARD FOR AVOIDING TOBACCO SURCHARGE
### (Violation of 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702)

61.    Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–53 of this Complaint.

62.    To enroll in the Defendants' Plan, Plaintiff and all those similarly situated were required to pay a tobacco surcharge in the amount of roughly $23.08 per pay period, or roughly $600 per year.

63.    29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual."

64.    Defendant improperly imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of up to $23.08 per pay period on participants (and their dependents) who use tobacco, and by charging some participants more than others based on a health status-related factor Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b).

65.    Applicable regulations provide an exception for wellness programs, provided they comply with the requirements outlined in the regulations. *See* 29 C.F.R. § 2590.702(f). Defendant did not give statutorily required notice of a compliant reasonable alternative standard in that neither the Plan document nor the SPD for the Plan during the applicable limitations period detailed a smoking cessation program such that a participant could avoid paying the tobacco surcharge for the entire plan year, in violation of the applicable regulations. 29 C.F.R. § 2590.702(f)(3)(E)(v).

66.    Defendant's failure to notify participants of a reasonable alternative standard prevents it from asserting an affirmative defense on that basis under the statutory safe harbor protection.

67.    Further, Defendant's wellness program fails to provide participants with the necessary statement that recommendations of a participant's physician will be accommodated in connection with the development of a reasonable alternative standard. *See* 29 C.F.R. § 2590.702(f)(4)(v). Additionally, ERISA § 102(b), 29 U.S.C. § 1022(b) requires that the SPD contain "the plan's requirements respecting eligibility for participation and benefits [and] . . . circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." By failing to include any mention of the tobacco surcharge of the wellness program in either the Plan document or the SPD, Defendants have violated ERISA's notice requirements. Accordingly, Defendant's wellness plan fails to qualify for the safe-harbor exception to the prohibition against discriminatory wellness plans. Defendant's wellness program is discriminatory in violation of 29 U.S.C. §1182(b).

68.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3). Plaintiffs and the Class were charged an improper fee in connection with a health-related factor that enabled Defendant to extract additional funds that it could use to avoid contributing to the Plan. Defendant mixed those funds into its general assets. Equitable relief is necessary to stop the enforcement of the wellness program and recover the tobacco surcharges that were unlawfully imposed without proper disclosure.

69.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief

## COUNT III
## BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

70.     Plaintiffs re-allege and incorporate herein by reference all allegations in paragraphs 1–53 of this Complaint.

71.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), imposes several fiduciary duties on Plan Administrators, including the duty to act loyally and "solely in the interest of the participants and beneficiaries[,]" the duty to act with "care, skill, prudence, and diligence" — which includes ensuring that benefits paid pursuant to a defined benefit plan conform with ERISA's statutory requirements — and the duty to act "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with* the provisions of" subchapters I and III of ERISA. 29 U.S.C. § 1104(a)(1) (emphasis added).

72.     Throughout all relevant times, Defendant was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the Plan and the disposition of its assets by collecting the unlawful fees from tobacco users, holding those funds in its own accounts, and failing to contribute as much of its own assets to the Plan. In doing so, Defendant exercised its discretionary authority and discretionary responsibility in the administration of the Plan.

73.     Defendant breached its fiduciary duties by exercising discretionary authority over the administration and management of the Plan. Defendant's control over the collection and retention of the tobacco surcharges, as well as its administration of the Plan's wellness program, including the "Quit 4 Life" program and the associated lack of retroactive reimbursement constitute fiduciary acts under ERISA. Defendant did not merely perform settlor functions, such

as designing the wellness program; it actively managed the program's implementation, including setting the terms for the surcharge refunds (or lack thereof) and deciding whether participants who completed the wellness program midyear would receive the full refund. These decisions involved the exercise of discretion and judgment in plan administration.

74.     Defendant breached its fiduciary duties by prioritizing its financial interests over the interests of plan participants. Defendant retained the tobacco surcharges deducted from participants' paychecks without properly administering retroactive refunds to individuals who completed the wellness program. By designing a program that collects surcharges while failing to provide the "full reward" or adequately disclose participants' rights, Defendant has created a program that disproportionately benefits itself at the expense of Plan participants. This practice resulted in an unjust enrichment to Defendant at the expense of participants, demonstrating a failure to act solely in the interests of participants and beneficiaries.

75.     By retaining the amounts of the tobacco surcharges, Defendant increased its own monies and saved the money it would have had to contribute to the Plan. In doing so, Defendant dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with the "full reward" to which they are entitled, Defendant improperly benefitted from its own wellness program at the expense of Plan participants.

76.     Defendant also breached its fiduciary duties by: failing to properly disclose material information about the plan to participants, thereby misleading or depriving them of the ability to make informed decision, failing to act solely in the interest of participants (and their beneficiaries) in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(A); administering a Plan that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29

U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the wellness program to ensure it properly complied with the relevant requirements regarding the "full reward" and the necessary notices and disclosures regarding alternative standards (or lack thereof) and accommodating participants' personal physicians. These breaches caused Plaintiffs and the Class to incur unlawful and discriminatory surcharges.

77.    As a direct and proximate result of these fiduciary breaches, Plaintiffs and members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

78.    Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan or a constructive trust all profits it acquired through its violations alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A.  An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B.  A declaratory judgment that the Plan's wellness program is discriminatory and unlawful and, by extension, any tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.  An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge within the applicable limitations period;

23

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a wellness program that violated ERISA's anti-discrimination provisions, violated ERISA's disclosure provisions, and for failing to adequately monitor the wellness program to ensure the terms thereof complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharge under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from continuing to implement an unlawful wellness program, further violating the duties, responsibilities, and obligations imposed on the Plan's fiduciaries by ERISA with respect to the Plan, and ordering Defendant remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendant collected as unlawful surcharges;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharge;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the wellness program and accompanying tobacco surcharge are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate

24

injective relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L.  An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: December 4, 2024                    Respectfully submitted,


/s/ *Christopher Williams*

**SIRI & GLIMSTAD LLP**

Christopher Williams
Oren Faircloth (*pro hac vice*)
Scott Haskins (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: cwilliams@sirillp.com
E: ofaircloth@sirillp.com
E: shaskins@sirillp.com


*Attorneys for Plaintiffs and the Proposed Class*