# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| RICHARD L. MEHLBERG, and ANGELA R. DEIBEL, individually, on behalf of all others similarly situated, and on behalf of the Plan, )<br><br>Plaintiffs, )<br><br>v. )<br><br>COMPASS GROUP USA, INC., )<br><br>Defendant. ) | Case No. 24-cv-04179-SRB |

**ORDER**

Before the Court is Defendant Compass Group USA, Inc.'s ("Defendant") Motion to Dismiss. (Doc. #33.) As set forth below, the motion is DENIED.

**I. FACTUAL BACKGROUND**

The following allegations are primarily taken from Plaintiff Richard L. Mehlberg ("Plaintiff Mehlberg") and Angela R. Deibel's ("Plaintiff Deibel") (collectively, "Plaintiffs") Class and Representative Action Complaint (Doc. #1), without further quotation or attribution unless otherwise noted. Because this matter comes before the Court on a motion to dismiss, the allegations are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). This Order assumes familiarity with the applicable facts and law. Only those allegations necessary to resolve the pending motion are discussed below and they are simplified to the extent possible. Additional allegations and facts relating to the pending motions are discussed in Section III.[1]

---

[1] All page numbers refer to the pagination automatically generated by CM/ECF.

According to its website, Defendant is "the nation's largest family of foodservice and facilities services companies, serving more than 13 million meals and maintaining more than 1.9 billion square feet a day." (Doc. #1, pp. 1-2.) Plaintiff Mehlberg is a citizen of the State of Missouri. Plaintiff Mehlberg worked for Defendant's subsidiary Morrison Management Specialists, Inc. in Columbia, Missouri. Plaintiff Deibel is a citizen of the State of Missouri. Plaintiff Deibel worked for Defendant's subsidiary Fresh Ideas Management LLC in Marshall, Missouri.

Employees of Defendant and Defendant's subsidiaries can receive health insurance coverage by participating in a medical plan sponsored and administered by Defendant. These medical plans operate under the plan name Employee Benefit Plan of the Compass Group USA, Inc. ("the Plan"). The Plan is subject to and governed by the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1003(a).

Plaintiffs allege that "to participate in the Plan," they were required to "declare whether they are a tobacco user." (Doc. #1, p. 2.) "Those who do use tobacco products are required to pay an additional fee of at least $48 per bi-weekly pay period—or $1,248 per year—to maintain coverage." (Doc. #1, p. 2.) Plaintiffs generally allege that such "tobacco surcharges" can be lawful, but only if the surcharge complies with ERISA, "applied to medical plans by the Patient Protection and Affordable Care Act, and implementing regulations." (Doc. #1, p. 2.) Plaintiffs allege that Defendant "collected the tobacco surcharge in violation of the law and in violation of its duties to plan participants and the Plan." (Doc. #1, p. 2.)

On October 9, 2024, Plaintiffs filed this lawsuit on behalf of themselves and on behalf of a putative class of Plan participants who paid the tobacco surcharge. Plaintiffs assert the following claims: Count I–ERISA Statutory Violation: Unlawful Surcharge–Failure to Provide a

Reasonable Alternative Standard; Count II–ERISA Statutory Violation: Unlawful Surcharge–Failure to Provide Required Notice; and Count III–ERISA Breach of Fiduciary Duty, 29 U.S.C. § 1109.  Plaintiffs seek various forms of relief, including that Defendant reimburse "all persons who paid [the allegedly unlawful] tobacco surcharge."  (Doc. #1, pp. 19-20.)

Defendant now moves to dismiss Plaintiffs' Complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6).  Plaintiffs oppose the motion.  The parties' arguments are addressed below.

## II.  LEGAL STANDARD

Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Standing is a jurisdictional issue."  *Disability Support Alliance v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018).  "[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction."  *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  When deciding a motion to dismiss, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual

proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotations omitted).

### III. DISCUSSION

Plaintiffs allege in part that Defendant's tobacco surcharge violated ERISA's so-called non-discrimination provision. This provision prohibits a group health plan from charging a premium based on a participant's health status-related factor. Specifically, 29 U.S.C. § 1182(b)(1) provides that:

> A group health plan . . . *may not require any individual . . . to pay a premium or contribution* which is greater than such premium or contribution for a similarly situated individual enrolled in the plan *on the basis of any health status-related factor* in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

29 U.S.C. § 1182(b)(1) (emphasis supplied).

However, § 1182(b)(2)(B) contains an exception which allows a plan to issue discounts to participants who comply with a wellness program:

> [n]othing in paragraph [b](1) shall be construed . . . to prevent a group health plan . . . *from establishing premium discounts or rebates* or modifying otherwise applicable copayments or deductibles *in return for adherence to programs of health promotion and disease prevention.*

29 U.S.C. § 1182(b)(2)(B) (emphasis supplied). Taken together, these two statutory provisions allow a plan to issue discounts or rebates to participants that do not use tobacco if the plan has implemented a valid wellness program. *See id.*

Under Department of Labor ("DOL") regulations, a plan's wellness program must comply with certain requirements to qualify for the § 1182(b)(2)(B) exception. *See* 78 Fed. Reg. 33158, at 33160 (June 3, 2013).[2] One requirement is that an outcome-based wellness program

---

[2] Defendant emphasizes that in 2010, "the Affordable Care Act ('ACA') amended ERISA to incorporate Section 2705 of the Public Health Service Act ('PHSA') regarding, among other things, wellness programs." (Doc. #37, p. 23.) In particular, Defendant contends the PHSA "amended ERISA . . . to add the key 'absence of a surcharge' as a 'reward'

4

(e.g., not using tobacco) must give participants "notice of availability of [a] reasonable alternative standard" to qualify for the discount or rebate. 29 C.F.R. § 2590.702(f)(4)(v). "The plan or issuer must disclose in all plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702(f)(4)(v) (emphasis supplied). As further discussed below, another requirement is that for an "alternative standard" to be deemed reasonable, "[t]he *full reward* under the outcome-based wellness program *must be available* to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis supplied).

### 1. Plaintiffs Have Standing

"Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *Auer v. Trans Union LLC*, 902 F.3d 873, 877 (8th Cir. 2018). To avoid dismissal based on standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Here, Defendant argues Plaintiffs lack Article III standing because they have failed to allege an injury traceable to Defendant's conduct. In particular, Defendant argues that the "alleged statutory violation underlying all three Counts in the Complaint is not the imposition of the tobacco surcharge in general, but rather that [Defendant] did not offer a retroactive refund of

---

language at issue here." (Doc. #40, p. 14.) However, the Court agrees with Plaintiffs that "the PSHA's provisions are consistent with those of § 1182(b)(2) of ERISA." (Doc. #37, p. 23.) The Court finds that the PHSA does not alter any of the rulings herein.

the tobacco surcharge for participants who completed a tobacco cessation program." (Doc. #34, p. 17.) However, "Plaintiffs do not allege that they participated in the program and only received a prospective waiver, or that they wanted to participate in the cessation program at all. Plaintiffs cannot suffer an injury from an allegedly non-compliant program in which they did not participate." (Doc. #34, p. 17.) Defendant further argues that even if it "had operated the tobacco wellness program in the exact way that Plaintiffs claim it should have been run, they would have still paid the tobacco surcharge for the entire Plan year because they never took any steps to complete the cessation program that they challenge." (Doc. #34, p. 18.)

Upon review, the Court rejects Defendant's arguments. As further discussed below, Plaintiffs have plausibly alleged that Defendant violated ERISA. Plaintiffs further allege that Defendant unlawfully deducted money from their wages "under the payroll deduction heading 'TOBACCO SURCHARGE.'" (Doc. #1, ¶¶ 9-10.) "[A] statutory right not to be charged . . . cause[s] a particularized injury that affect[s] the class members in a personal and individual way. Paying a fee they should not have been charged [is] also a concrete injury, not an abstract one that does not 'actually exist.'" *McKeage v. Bass Pro Outdoor World, LLC*, 943 F.3d 1148, 1150 (8th Cir. 2019) (citations and quotations omitted).

For these reasons, and for the additional reasons stated by Plaintiffs, Plaintiffs have standing because they have adequately alleged that Defendant caused them monetary loss by imposing an unlawful fee. *Id.*; *see also Lipari-Williams v. Missouri Gaming Company*, 339 F.R.D. 515, 523-25 (W.D. Mo. 2021) ("The standing requirement is satisfied . . . because Plaintiffs have alleged that Defendant caused them monetary loss by imposing a fee that was unlawful."). Defendant's argument that Plaintiffs failed to "allege traceability and redressability" is therefore denied. (Doc. #40, p. 8)

Defendant also argues that Plaintiffs lack Article III standing to pursue Count II.  In Count II, Plaintiffs allege that Defendant's "tobacco surcharge is not and was not a permissible wellness program, because [Defendant] did not give statutorily required notice of [a] reasonable alternative standard[.]"  (Doc. #1, ¶ 61.)  Specifically, Plaintiffs allege that Defendant failed to: (1) "disclose the availability of an alternative standard—such as a smoking cessation program—by which the surcharge could be avoided;" (2) "notify participants and beneficiaries that they would be eligible to receive the full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year;" and (3) "include a statement that recommendations of an individual's personal physician will be accommodated in conjunction with the formation of a reasonable alternative standard."  (Doc. #1, ¶ 61(a)-(c).

Defendant contends that Plaintiffs lack standing because they "do not allege any consequences personally suffered *from these alleged flaws*.  Plaintiffs do not allege that they did not participate in the cessation program because of the alleged defects, nor do they allege that a different or additional notice would have changed their behavior."  (Doc. #34, p. 18) (citing *TransUnion*, 594 U.S. at 442; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)) (emphasis in original).

Upon review, the Court rejects Defendant's arguments.  As stated above, Plaintiffs allege that Defendant failed to provide notice of a reasonable alternative standard.  *See* 29 C.F.R. § 2590.702(f)(4)(v).  Plaintiffs further allege that they "and class members were required to pay an illegal fee, and [Defendant] collected that fee from them in violation of the law."  (Doc. #1, ¶ 65.)  Under these circumstances, the Court agrees with Plaintiffs that "a legally deficient notice confers standing when coupled with an actual monetary loss."  (Doc. #37, p. 18) (citing cases).

7

Defendant argues Plaintiffs lack Article III and statutory standing to assert claims arising after April 6, 2024.  Defendant explains that Mehlberg terminated employment as of April 6, 2024, and Diebel waived medical coverage as of January 1, 2024.  However, as explained above, Plaintiffs have standing to pursue their claims.  As a result, the Court agrees with Plaintiffs that "whether Plaintiffs may represent other employees who participated at different times . . . is a class certification issue . . . and not [a] standing [issue]."  (Doc. #37, p. 19.)  For these reasons, and the additional reasons stated by Plaintiffs, Defendant's standing arguments are rejected.

### 2.  Plaintiffs' Claims Are Adequately Stated

#### A.  Plaintiffs Have Adequately Alleged that ERISA Requires Retroactive Rebates of Tobacco Surcharges

Defendant argues that Plaintiffs fail to state a claim because its wellness program complies with ERISA.  In particular, Defendant contends:  (1) its wellness program gives tobacco users an ongoing opportunity to obtain a reward (the absence of a surcharge) for adhering to the tobacco wellness program; (2) if a tobacco user cannot met the wellness program's initial standard of being tobacco free, the user can complete the reasonable alternative standard (the cessation program); and (3) if the user completes the cessation program, "the participant obtains the same reward (i.e., the absence of a surcharge) and pays the same amount in premiums as a non-tobacco user on a going forward basis."  (Doc. #34, p. 20.)  Defendant then argues that—contrary to Plaintiffs' allegations—ERISA does "not require retroactive rebates of tobacco surcharges."  (Doc. #34, p. 20.)

Upon review, the Court rejects Defendant's arguments.  In *Lipari-Williams v. Missouri Gaming Company*, 339 F.R.D. 515 (W.D. Mo. 2021), the Court rejected a similar argument.  Specifically, the Court ruled that:

8

> for an 'alternative standard' to be deemed reasonable, '[t]he *full reward* under the outcome-based wellness program must be available to all similarly situated individuals.' 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis supplied). The 'full reward' requires retroactively reimbursing a participant that completes the alternative standard. In particular, 'if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.' 78 Fed. Reg. 33158, at 33163 [preamble].

*Id.* at 522-523. Under this precedent, Plaintiffs have adequately alleged that Defendant's tobacco surcharge violated ERISA because it did not offer a retroactive reimbursement of the surcharge.[3]

Defendant relatedly argues that "Plaintiffs' only support for their interpretation of the statute is language from the preamble of the" regulation cited above, 78 Fed. Reg. at 33163. (Doc. #34, p. 20.) Defendant contends that "a preamble to an agency regulation is not the law and, even if it were, Plaintiffs' interpretation [of a retroactive reimbursement] does not comport with the best reading of the statute and thus is owed no deference by this Court." (Doc. #34, pp. 20-21.) Defendant explains that in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court "overruled *Chevron* and its requirement that courts defer to an agency's regulation interpreting a statute . . . after *Loper Bright*, the DOL's regulations under ERISA . . . are no longer the controlling legal rule; rather, the Court's interpretation of the statute controls." (Doc. #34, p. 21.)

Upon review, the Court rejects Defendant's arguments. Instead, the Court agrees with Plaintiffs that:

> [Defendant] argues that the 'sole' basis for Plaintiffs' claim that the phrase 'full reward' requires retroactive reimbursement is 'the preamble to the 2013 regulations.' But that is not the sole basis: it is also that the word 'reward' is qualified by the word 'full,' in both the DOL regulation and the statutory text of § 2705 of the PHSA. Indeed, the 2006 version of the DOL regulation

---

[3] *Lipari-Williams* was decided in the class certification context. However, the Court agrees with Plaintiffs that Defendant fails to provide a persuasive argument for not applying the rulings therein to the pending motion to dismiss.

9

> required only a 'reward' for completion of a wellness program; in the 2013 version of the regulation, the word 'reward' was replaced with the phrase 'full reward.' *Compare* 29 C.F.R. § 2590.702(f)(2)(iv) (Dec. 13, 2006) with 29 C.F.R. § 2590.702(f)(3)(iv), (f)(4)(iv). . . . [T]he addition of the word 'full' removed any doubt that the 'reward' was intended to apply retroactively. [Defendant] [argues] that regulatory preambles are not 'legislative rules' with the independent force of law. But the preamble reflects the agency's interpretation of its own regulations. Per well-settled law, a court must accept an agency's interpretation of its own regulations as 'controlling unless plainly erroneous or inconsistent with the regulation.' *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (cleaned up).

(Doc. #37, pp. 25-26).

Defendant makes a host of other arguments, including that interpreting "full reward" to require retroactive reimbursement would contradict the statutory term "adherence." (Doc. #34, pp. 23-27.) According to Defendant, "until Plan participants participate in a cessation program, they are not adhering to a program, and as such, they are not entitled to the reward, which in this case, is the absence of (i.e., removal of) a surcharge." (Doc. #34, p. 24.) Defendant further points to the DOL's 2013 regulations that defined "reward" to include "avoiding a penalty (such as the absence of a premium surcharge or other financial or nonfinancial disincentives)." (Doc. #34, p. 25.) Based on that definition, Defendant argues "a thing cannot be avoided retroactively." (Doc. #34, p. 25.)

Upon review, the Court rejects this argument. The Court finds "no conflict between a statutory requirement that plan participants 'adhere' to a wellness program to become eligible for the 'full reward,' and a statutory and regulatory requirement—expressed by the phrase 'full reward'—that they be refunded the full amount of the annual surcharge if they do so." (Doc. #37, p. 27.)

Finally, *Lipari-Williams* was partially decided through a plain language analysis of the statute. "In *Lipari-Williams*, the defendant argued that the plaintiff's claims relied on regulations

10

that were inconsistent with the plain language of § 1182(b) of ERISA, which permits 'premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention.' 29 U.S.C. § 1182(b)(2)(B)." (Doc. #37, p. 22.)

The Court did not agree, and instead ruled that:

> The plain language of § 1182(b)(2) allows "premium *discounts* or *rebates*[.]" 29 U.S.C. § 1182(b)(2) (emphasis supplied). However, the tobacco surcharge at issue does not appear to be a discount or a rebate. The Court agrees with Plaintiffs that '[i]n their ordinary usage, both 'discount' and 'rebate' refer to a reduction in cost, whereas [Defendant's] tobacco surcharge imposes an increase in cost on tobacco users above the baseline price' . . . the Court finds that the tobacco surcharge is not a 'discount' or 'rebate,' and thus does not fall under § 1182(b)(2)'s exception.

*Lipari-Williams*, 339 F.R.D. at 524 (citation omitted). Because the safe harbor language in § 1182(b)(2) was plain, *Lipari-Williams* "did not rely on *Chevron* in interpreting the statute, instead referencing it only as a hypothetical alternative to its primary conclusion." (Doc. #37, p. 23) (citation omitted). *Loper Bright* does not apply under these circumstances.

For all these reasons, and for the additional reasons stated by Plaintiffs, the Court rejects Defendant's arguments that ERISA does not require retroactive rebates of tobacco surcharges. (Doc. #34, p. 27.) Consequently, Defendant's motion to dismiss on that basis is denied.

### B. Plaintiffs Have Adequately Alleged Notice Deficiencies

As discussed above, a "wellness program" must disclose the availability of a "reasonable alternative standard to qualify for the reward" in "all plan materials." 29 C.F.R. §2590.702(f)(4)(v) (emphasis added); 42 U.S.C. §300gg-4(j)(3)(E). Among other things, the disclosure must include "contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. §2590.702(f)(4)(v).

11

In Count II, Plaintiffs allege that Defendant did not comply with these provisions. Specifically, Plaintiffs allege in part that the "Plan's written materials discussed the tobacco surcharge but did not include a statement that recommendations of an individual's personal physician will be accommodated in conjunction with the formation of a reasonable alternative standard."  (Doc. #1, ¶ 61(c)).

In part, Defendant argues this claim should be dismissed because its 2022 Enrollment Guide contained the required disclosures.  Upon review, this argument is denied.  The Court agrees with Plaintiffs that Defendant "does not claim that the 2022 Plan document that it submitted discloses that a *physician's recommendations* would be accommodated, as required, let alone that 'all' plan materials that referenced the surcharge did so."  (Doc. #37, p. 29) (emphasis added).  At the motion to dismiss stage, the Court finds that Count II adequately states a claim.

### C.  Breach of Fiduciary Duty Claim

Count III asserts a claim for breach of fiduciary duty under 29 U.S.C. § 1109.  In relevant part, § 1109 states that:

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate[.]

29 U.S.C. § 1109(a).

Defendant argues this claim should be dismissed for two primary reasons.  First, Defendant argues that because "Plaintiffs' Complaint takes aim at the terms of the Plan's tobacco wellness program, i.e., its plan design, it falls outside the scope of ERISA's fiduciary duties and

cannot give rise to a claim under ERISA[.]"  (Doc. #34, p. 22) (citation omitted).  Defendant relatedly argues that this count fails to state a claim because "there is no allegation that [Defendant] did not administer the tobacco wellness program in accordance with the Plan's terms."  (Doc. #34, p. 29.)

These arguments are not persuasive.  "ERISA imposes fiduciary duties when employers manage and deal in fund assets;" but "[c]onversely, when employers adopt, modify, or terminate plans that provide pension benefits, 'they do not act as fiduciaries, but are analogous to the settlors of a trust."  *Schultz v. Windstream Commc'ns, Inc.*, 600 F.3d 948, 951 (8th Cir. 2010) (citation and quotation marks omitted).  Here, Plaintiffs allege in part that Defendant "breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto."  (Doc. #1, ¶ 68.)  Plaintiffs further allege that "[d]espite being unlawful for the reasons already discussed above, [Defendant] was duty-bound to deposit the tobacco surcharge amounts into the Plan once they were collected from Plaintiffs and other similarly situated participants.  Instead, on information and belief, [Defendant] took those amounts, did not deposit them into the Plan, used them to offset its own contribution amounts, and otherwise used them to profit at the expense of the Plan."  (Doc. #1, ¶ 70.)

At the motion to dismiss stage, these allegations sufficiently allege that Defendant acted as a fiduciary and engaged in prohibited transactions.  Defendant's reply brief emphasizes that Plaintiffs failed to "dispute that their prohibited transaction claims should be dismissed."  (Doc. #40, p. 19.)  But the Complaint is sufficient to withstand a motion to dismiss and Defendant may reassert its arguments following discovery.

13

Second, Defendant argues that relief for a fiduciary breach claim is limited to recovering losses to a plan but "the Complaint does not identify any losses to the Plan." (Doc. #34, p. 30.) This argument is rejected. As explained by Plaintiffs, the Complaint alleges that Defendant "kept the illegal tobacco surcharge to offset its own contributions, when those funds should have been deposited into the Plan. Plaintiffs thus request, as the statute explicitly allows, disgorgement of 'all unjust enrichment and ill-gotten profits.'" (Doc. #37, p. 31.) These allegations are sufficient to show a loss to the Plan.

### IV.  CONCLUSION

Accordingly, Defendant's Motion to Dismiss (Doc. #33) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  April 15, 2025